1
2
3
4
5
6
7
8
9

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **INFINITY INSURANCE COMPANY,** ) | **CIV F 07-583 AWI TAG** |
| ) | |
| **Plaintiff,** ) | **ORDER ON DEFENDANT'S** |
| ) | **MOTION TO DISMISS** |
| **v.** ) | |
| ) | |
| **BULMARO SEVILLA GUERRERO,** ) | |
| **IVAN SEVILLA, and GONZALO** ) | |
| **ANTILLON,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This is a declaratory judgment action that is related to an automobile collision between

Ivan Sevilla ("Sevilla") and Gonzalo Antillon ("Antillon").  Bulmaro Sevilla Guerrero

("Guerrero") owned the car driven by his son Sevilla and had an automobile insurance policy

with Infinity Insurance Company ("Infinity").  Antillon filed this Rule 12(b)(1) motion and

argues that the amount in controversy does not exceed $75,000.  The Court will grant the motion.

## FACTUAL BACKGROUND

From the Complaint, on June 14, 2006, Infinity issued an automobile insurance policy

("the Policy") to Guerrero for three vehicles.  On the same date, Guerrero signed a questionnaire.

The questionnaire requested a list of all members in Guerrero's household who were age 14 or

older, and asked whether he wished coverage for them.  Guerrero listed only his wife and wrote

that he did not want coverage for her.  The application for the Policy also requested that the

applicant "complete for all persons age 15 and older, licensed or not, who reside with the applicant, and any other drivers of the vehicles on this application."  Guerrero listed only himself. As part of the application, Guerrero certified that he listed all operators of the vehicles including anyone who may operate the vehicle on a regular or frequent basis, all children away from home, and all persons age 14 or older who live with Guerrero.  Guerrero also certified that he would notify Infinity of any changes in operators or licensing of any household residents.

On July 1, 2006, Guerrero's son Sevilla was involved in an automobile accident with Antillon.  Sevilla was 24 years old and had been driving a vehicle covered by the Policy. Guerrero had not disclosed Sevilla on the application or questionnaire.  On July 3, 2006, a claim for defense and indemnity arising out of the accident was tendered to Infinity under the Policy.

Infinity investigated and determined that Sevilla was not licensed at the time of the accident, had lived in Guerrero's household on June 14, 2006, had lived with Guerrero the majority of his life, and that two other undisclosed drivers over the age of 14 lived in Guerrero's household on June 14, 2006.  On August 15, 2006, Infinity wrote to Guerrero and rescinded the Policy based on material misrepresentations.  Infinity informed Guerrero that the Policy was rescinded *ab initio*, a refund of premiums would be sent, and it would not be responsible for any defense or indemnity.  On September 7, 2006, Infinity mailed Guerrero a refund check.

On September 6, 2006, Antillon's attorney sent to Infinity a hospital bill for Antillon which exceeded $100,000.  On October 20, 2006, Antillon filed a lawsuit against Sevilla and Guerrero.  On November 8, 2006, Guerrero's attorney sent a copy of the summons and complaint to Infinity and tendered the matter for defense and indemnification.  On December 22, 2006, Infinity responded that the Policy had been rescinded, but nevertheless assigned outside counsel to the case under a reservation of rights.

On April 16, 2007, Infinity filed this action based on diversity jurisdiction and attached a copy of the Policy, questionnaire and application to its complaint.  Infinity alleges that over $75,000 is in controversy and seeks a declaration that the Policy was properly rescinded *ab initio* and that it owes no duty to defend or indemnify Guerrero and Sevilla in the Antillon action.

# LEGAL FRAMEWORK

## *Rule 12(b)(1)*

Federal Rules of Civil Procedure 12(b)(1)allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006).  Limits upon federal jurisdiction must not be disregarded or evaded.  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at 1250.  The complaint must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."  Tosco Corp. v. Communities For A Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  See Wolfe, 392 F.3d at 362; see also Meyer, 373 F.3d at 1039.  When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Meyer, 373 F.3d at 1039; Savage, 343 F.3d at 1039 n.2.  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack.  Meyer, 373 F.3d at 1039; White, 227 F.3d at 1242.

3

1    *Diversity Jurisdiction – 28 U.S.C. § 1332*

2         In relevant part, 28 U.S.C. § 1332 provides that "district courts shall have original

3    jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

4    $75,000, exclusive of interest and costs and is between . . . citizens of different States . . . ." 28

5    U.S.C. § 1332(a)(1).  The amount in controversy is generally determined from the face of the

6    pleadings.  See Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000);

7    Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 363 (9th Cir. 1986).  As long as

8    the sum claimed by the plaintiff is made in good faith, that sum controls.  See St. Paul Mercury

9    Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); Crum, 231 F.3d at 1131.  In cases brought

10   in federal court in which the plaintiff has a good faith complaint that alleges damages in excess

11   of $75,000, dismissal is appropriate when it appears to a legal certainty that the claim is really for

12   less than $75,000.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402 (9th Cir. 1996).  A

13   district court's "jurisdiction . . . depends on the amount that was in controversy when the federal

14   suit began."  Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 538 (7th Cir. 2006) (citing St.

15   Paul Mercury, 303 U.S. at 293); see Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir. 1965).  The

16   amount in controversy "is determined by the amount involved in the particular case, and not by

17   the contingent loss either of the parties may sustain by the probative effect of the judgment, or by

18   its collateral effect in another suit."  Hartford Fire Ins. Co. v. Bonner Mercantile Co., 56 F. 378,

19   383 (9th Cir. 1893); see Rapoport v. Rapoport, 416 F.2d 41, 43 (9th Cir. 1969).

20

21                              **ANTILLON'S MOTION TO DISMISS**

22        **Defendant's Argument**

23        Defendant argues that in declaratory judgment actions where the suit seeks to rescind or

24   invalidate an insurance contract, the policy limits establish the amount in controversy.  Since

25   Infinity seeks a declaration that the Policy was rescinded *ab initio*, the Policy limits determine the

26   amount in controversy.  The Policy has a limit of $40,000.  Thus, the policy limits in this case is

27   well below the $75,000 plus necessary for jurisdiction.

28

1 **Plaintiff's Opposition**

2        Infinity argues that this case is not simply about invalidating a contract, rather it is about

3 determining the duties to defend and indemnify.  In such cases, the amount in controversy is the

4 amount of damages or the value of the property that is the subject of the action.  Here, Antillon is

5 seeking $200,000 from Infinity to settle the case, the cost of defense including a possible appeal

6 is approximately $40,000, and there are potential attorneys fees and punitive damages in a bad

7 faith suit against Infinity that Defendants could file in order to compel payment of benefits.

8 Accordingly, the amount in controversy easily exceeds $75,000.

9        **Legal Standard**

10        *Declaratory Judgment*

11        The Declaratory Judgment Act allows a federal court to "declare the rights and other legal

12 relations" of parties to a "case of actual controversy."  28 U.S.C. § 2201; Spokane Indian Tribe v.

13 United States, 972 F.2d 1090, 1091 (9th Cir. 1992).  "The purpose of the [§ 2201] is to relieve

14 potential defendants from the Damoclean threat of impending litigation which a harassing

15 adversary might brandish, while initiating suit at his leisure - or never."  Spokane Indian Tribe,

16 972 F.2d at 1091-92.  "However, the Declaratory Judgment Act is not a jurisdictional statute"

17 and "does not create subject matter jurisdiction where none otherwise exists," rather it "only

18 creates a particular kind of remedy available in actions where the district court already has

19 jurisdiction to entertain a suit."  Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970); see also

20 Clark v. Busey, 959 F.2d 808, 811 (9th Cir. 1992).  Stated differently, in order to obtain

21 declaratory relief in federal court, the basis for federal jurisdiction must be independent of the

22 Declaratory Judgment Act itself.  See Stock West, Inc. v. Confederated Tribes of Colville

23 Reservations, 873 F.2d 1221, 1225 (9th Cir. 1989).

24        In declaratory judgment actions where the independent basis for jurisdiction is diversity,

25 "the amount in controversy is measured by the value of the object of the litigation."  Hunt v.

26 Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977); Cohn v. Petsmart, Inc., 282

27 F.3d 837, 840 (9th Cir. 2002).  In declaratory judgment cases involving "the applicability of an

28 insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured

1  by the value of the underlying claim – not the face amount of the policy." <u>Hartford Ins. Group v.</u>

2  <u>Lou-Con, Inc.</u>, 293 F.3d 908, 911 (5th Cir. 2002); <u>see also</u> <u>Budget Rent-A-Car, Inc. v.</u>

3  <u>Higashiguchi</u>, 109 F.3d 1471, 1473 (9th Cir. 1997); <u>Jordan Ice Co. v. Grange Mut. Cas. Co.</u>,

4  2006 U.S. Dist. LEXIS 87721, *7 (E.D. Ky. 2006); <u>National Union Fire Ins. v. Maune</u>, 2006 U.S.

5  Dist. LEXIS 10831, *5 (E.D. Mo. 2006); <u>American Std. Ins. Co. v. Rogers</u>, 123 F.Supp.2d 461,

6  463 (S.D. Ind. 2000); <u>Darbet, Inc. v. Bituminous Casualty Corp.</u>, 792 F.Supp. 487, 488-89 (S.D.

7  W. Va. 1992); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal*

8  *Practice & Procedure* § 3710 (3d ed. 1998) (hereinafter "Wright & Miller"); California Practice

9  Guide: Federal Civil Procedure Before Trial § 10:22.2 (The Rutter Group 2007) (hereinafter

10  "Federal Rutter").  However, if the substance of the declaratory judgment action seeks to

11  determine the validity of an insurance policy, then the policy limit is the amount in controversy.

12  <u>See</u> <u>Hawkins v. Aid Ass'n for Lutherans</u>, 338 F.3d 801, 805 (7th Cir. 2003); <u>Hartford</u>, 293 F.3d

13  at 911; <u>Higashiguchi</u>, 109 F.3d at 1473; <u>Home Ins. Co. of N.Y. v. Trotter</u>, 130 F.2d 800, 803 (8th

14  Cir. 1942); <u>Jordan Ice</u>, 2006 U.S. Dist. LEXIS 87721 at *7; <u>National Union</u>, 2006 U.S. Dist.

15  LEXIS 10831 at *4; <u>Rogers</u>, 123 F.Supp.2d at 463; <u>Darbet</u>, 792 F.Supp. at 488-89; <u>Button v.</u>

16  <u>Mutual Life Ins. Co.</u>, 48 F.Supp. 168, 171 (W.D. Ky. 1943); Wright & Miller at § 3710; Federal

17  Rutter at § 10:22.2.  When the validity of the insurance contract is at stake, the "fact that a claim

18  presently exists against the insured is not relevant for the purposes of determining the amount in

19  controversy."  Wright & Miller at § 3710.

20      *Rescission of Insurance Contract*

21      California law "permits an insurer to rescind a policy when the insured has

22  misrepresented or concealed material information in connection with obtaining insurance." <u>TIG,</u>

23  <u>Ins. Co. of Mich. v. Homestore, Inc.</u>, 137 Cal.App.4th 749, 755-56 (2006) (citing Cal. Ins. Code

24  § 331).  To rescind an insurance policy, the insurer must follow requirements of California Civil

25  Code § 1691.  <u>Atmel Corp. v. St. Paul Fire & Marine</u>, 426 F.Supp.2d 1039, 1044 (N.D. Cal.

26  2005).  A rescission "effectively renders the policy totally unenforceable from the outset, so that

27  there never was any coverage . . . ."  <u>Atmel Corp.</u>, 426 F.Supp.2d at 1044; <u>Cedars Sinai Med. Ctr.</u>

28  <u>v. Mid-West Nat'l Life Ins. Co.</u>, 118 F.Supp.2d 1002, 1011 (C.D. Cal. 2000); <u>Imperial Cas. &</u>

1  Indem. Co. v. Sogomonian, 198 Cal.App.3d 169, 182 (1988); see also Akin v. Certain

2  Underwriters at Lloyd's London, 140 Cal.App.4th 291, 298 (2006).  A rescission extinguishes an

3  insurance policy *ab initio*, "as though it never existed," and those claiming to be insureds "in law,

4  never were insureds under [the] policy of insurance."  Atmel Corp., 426 F.Supp.2d at 1045;

5  Sogomonian, 198 Cal.App.3d at 184; see also Cedars Sinai, 118 F.Supp.2d at 1011.  Thus, "there

6  is no duty to defend if an insurer has unilaterally rescinded a policy unless and until the rescission

7  has been set aside."  Atmel Corp., 426 F.Supp.2d at 1044-46; see also Sogomonian, 198

8  Cal.App.3d at 182-84.  A rescission avoids liability even on claims pending at the time of

9  rescission.  See Atmel Corp., 426 F.Supp.2d at 1044; Sogomonian, 198 Cal.App.3d at 182.  A

10  rescission applies "to all insured under the contract, including additional insureds, unless the

11  contract provides otherwise."  Cal. Ins. Code § 650; TIG, Ins., 137 Cal.App.4th at 756; see also

12  United States Specialty Ins. Co. v. Bridge Capital Corp., 482 F.Supp.2d 1164, 1169 (C.D. Cal.

13  2007).

14  **Discussion**[1]

15      The crux of Infinity's opposition is that this case is not about the validity of the Policy,

16  but is about the duties to defend and indemnify.  In other words, Infinity contends that this case is

17  about the application of the Policy to the occurrence of the automobile accident.  The Court

18  cannot agree.

19      After alleging that Guerrero made material misrepresentations regarding the members of

20  his household on the Application, see Complaint at ¶¶ 25-28, Infinity alleges that it properly

21  rescinded the Policy *ab initio* on August 15, 2006, and shortly thereafter refunded the premiums

22  paid.  See id. at ¶¶ 29-30.  The Complaint then alleges:

23          By reason of the foregoing, there now exists an actual, justifiable controversy
            among the parties within the meaning of 28 U.S.C. § 2201.  Specifically, Infinity
24          contends, based on the facts, policy terms and California law, [that] it had more
            than sufficient grounds for rescission of the Infinity Auto Policy based on Mr.
25          Guerrero's material misrepresentations, and Infinity followed the proper
            procedures for rescission of the Infinity Auto Policy.  Accordingly, Infinity
26

27      [1]Although Antillon's motion appears to be a facial attack, given the attachment of the Policy to the
    Complaint and the arguments of the parties, the result of Antillon's motion is the same whether the Court treats this
28  as motion as either a facial or factual attack.

7

contends it has no duty to defend or indemnify Mr. Guerrero or Mr. Sevilla in the Antillon Action.  Infinity is informed and believes that Mr. Guerrero and Mr. Sevilla, on the other hand, contend that Infinity did not have proper grounds for rescission of the [Policy] and/or did not follow proper procedures for rescission, and, accordingly, has a duty to defend and indemnify them in the Antillon Action. . . .

Id. at ¶ 32.

The Complaint then prays for a declaration that: (1) "the [Policy] was properly rescinded *ab initio*," and (2) Infinity "has no duty to defend or indemnify Mr. Guerrero or Mr. Sevilla in the Antillon Action."  Id. at Prayer.

Although the Prayer asks the Court to find the rescission valid and that Infinity owes no duties to Guerrero, the basis for requesting a declaration of "no duties owed" is the rescission. There is no other basis alleged in the complaint for declaring that Infinity owes no duties to Guerrero and Sevilla.  Because Infinity requests the Court to declare that the Policy was rescinded *ab initio*, the request to declare that Infinity owes no duty to defend or indemnify Guerrero and Sevilla is redundant.  If the policy was properly rescinded, then it immediately follows that the contract never existed and Infinity owes neither the duty to defend nor the duty to indemnify Guerrero and Sevilla.  Atmel Corp., 426 F.Supp.2d at 1044-46; Sogomonian, 198 Cal.App.3d at 182-84.  Moreover, the plain language of Paragraph 32 of the Complaint clearly shows that Infinity believes that it owes no duties to Guerrero and Sevilla because of the rescission and the concomitant extinguishment of the Policy *ab initio*.  Despite Infinity's arguments, the substance of this action is to determine the propriety of the rescission, and thus, the validity of the Policy.

Where the substance of the declaratory judgment action seeks to determine the validity of an insurance policy, the policy limit is the amount in controversy.  See Hawkins, 338 F.3d at 805; Hartford, 293 F.3d at 911; Higashiguchi, 109 F.3d at 1473; Home Ins., 130 F.2d at 803; Jordan Ice, 2006 U.S. Dist. LEXIS 87721 at *7; National Union, 2006 U.S. Dist. LEXIS 10831 at *4; Rogers, 123 F.Supp.2d at 463; Darbet, 792 F.Supp. at 488-89; Button, 48 F.Supp. at 171; Wright & Miler at § 3710; Federal Rutter at § 10:22.2.  The Policy provides coverage up to $15,000 per person, $30,000 per occurrence, and $10,000 for property damage.  See Complaint at

8

Exhibit A.  Neither party contends that the Policy limit exceeds $40,000.  Diversity jurisdiction requires that more than $75,000 be in controversy.  <u>See</u> 28 U.S.C. § 1392(a).  The face amount of the Policy, $40,000, is less than the $75,000 required for this Court to exercise diversity jurisdiction.  Thus, to a legal certainty, the amount in controversy is less than the jurisdictional minimum despite Infinity's allegation that more than $75,000 is in controversy.  Given that this case is based on and centered around rescission, the Court does not see how amendment could cure the lack of jurisdiction.  <u>Cf.</u> <u>Tosco</u>, 236 F.3d at 499.  Accordingly, dismissal without leave to amend is appropriate.

## **CONCLUSION**

The substance of this case is about the validity of the Policy in light of a rescission by Infinity, which means that the Policy limits determine the amount in controversy.  Since the policy limits ($40,000) is below the $75,000 threshold, the minimum jurisdictional amount in controversy is not met to a legal certainty and this Court lacks jurisdiction.

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant Antillon's Rule 12(b)(1) motion to dismiss is GRANTED;

2.    Plaintiff's Complaint is DISMISSED without leave to amend; and

3.    The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

**Dated:    August 6, 2007**                    _____**/s/ Anthony W. Ishii**_____
                                            UNITED STATES DISTRICT JUDGE